*TUCKER, P.
Various objections have been made to this decree, of which I shall proceed to dispose as succinctly as may be.
1. On the part of Eitzhugh, it is contended that he was originally improperly made a party, and that the bill as to him ought to have been dismissed. This objection is premature, as there is not yet a final decree in the cause. Until such decree be rendered, the plaintiff may go on with his proofs, and peradventure establish some ground of charge against him. In the present state of the record, I am by no means satisfied that he was improperly made a part}'; for he seems to have been an active agent in cutting timber and wasting the premises; and he may, perhaps, be made chargeable for the eloigning of the personal property between the execution of the first and second contracts. The uncertainty as to his age does not permit us to say how far he may or may not be bound.
2. It is objected, “that no specific execution of a sale of personal property can be enforced; and that no lien on the personal property for the purchase money exists, especially when money has been paid by the purchaser, the possession delivered to him, and he is solvent.” As to the first: the contract being for the sale of real and personal estate together for a lumping price, the specific execution cannot be decreed as to the real estate alone; and as there is clearly jurisdiction as to that, it must carry with it jurisdiction as to the personalty also. As to the second point: it is unimportant whether or not an implied lien exists, for in this case there is ample evidence that Clarke was not to have a title until the prarchase money was paid. This is obvious, both under the first and second contafct. By the first contract, indeed, which is very loosely worded, it is said, that the price was to be paid “when a deed should be made.” But the parties certainly did not design this as fixing the time of payment: Eor the x'vendees would not have been willing to pay up the cash the day after the contract, if a deed had then been tendered. Both parties contemplated a credit, and bonds were accordingly given for two instalments, payable in January 1838, and June 1839. Here then was a definite time appointed for payment, and no fixed time for making the deed; and where that is the case, the latter is not a precedent condition to the former. Bailey v. Clay, 4 Rand. 346. Besides it is clear, that by this contract, the delivery of the possession of the personal property, was not designed to operate to convey the title, as it is provided expressly, that it was to be conveyed by bill of sale. Under the second contract the retention of title is plain. Curtis agreed to execute a deed for the property to Clarke “whenever he should make the payments they should agree on.” He was not then to have the propert}' till he paid the money. A lien, therefore, clearly existed, and as to Clarke the sale was properly directed.
3. It is objected, that Colton & Clarke have purchased the property, and the plaintiff has not proceeded regularly as to them. That is nothing to Clarke; it does no injury to him. He violated good faith by attempting to sell to Colton & Clarke, , when no bill of sale had been made to him as the contract provided for: I say attempting; for it may admit of question, whether, as the goods were still left at Perton, a constructive change oi possession should be implied, against the rights of Curtis, from the mere order to deliver them.
4. It is objected, that the court has refused Clarke credit beyond his payment of 1000 dollars. I think it properly did so, upon the evidence in the case: yet there was enough in the evidence to justify sending the account to a commissioner. The failure to direct an account was therefore an error. So also was the omission to apply the proceeds of sale of the personalty to the discharge of the purchase money pro-tanto.
*There is a further error in directing a sale of the lands without having required a proper deed to be previously executed by Curtis and wife, since a sale under such circumstances might have led to a sacrifice.
I think too, the sale should have been for only one half cash and the other half on a credit of twelve months. And the commissioners should have been directed to report their proceedings to the court for its confirmation, instead of paying over the purchase money without the previous ratification of the sale.
Eor these errors, the decree must be reversed and the cause sent back for further proceedings, according to the principles here declared.
I have omitted to observe, that the decree in this case, though apparently founded upon the original, instead of the substituted contract, is substantially correct; since the price was identical in both, and though the time of paying the first instalment was varied, no change was made as to the time from which it was to bear interest. The amount due therefore would be the same under both.
BROOKE, CABELL and ALLEN, J., concurred.
STANARD, J.
This case is, in my opinion, a fit one for relief in equity. The circumstance that the contract sought to be carried into specific execution, embraced personal as well as1 real estate, does not preclude* the court of equity from giving such relief. The principle on which that jurisdiction is exercised, does not depend on the subject of the contract being real or personal, but on the adequacy of the remedy at law to give full and effectual relief. When the subject of the contract is real estate, generally if not universally, such full and effectual relief can be obtained in a court of equity only: whereas, when the subject is personalty, damages at law, in general, will afford the party injured adequate *redress; but when this is *722 not so, equity has jurisdiction to enforce specific execution of a contract for personalty, on the same principle on which the exercise of such jurisdiction when the subject of the contract is realty, is vindicated. Where (as in the present case) the subject of the contract of sale is mixed of real and personal estate, and a gross price to be paid, the jurisdiction is free from all reasonable doubt. Had the purchaser brought his suit for specific performance, there could not have been a doubt of the jurisdiction: for he, certainly, had not an adequate remedy at law. It is true he had possession of the personalty; but oh that no separate value had been fixed by the parties. They, probably, made very different estimates of the value of it; and the consequence would be, if he were driven to a suit at law for damages for the failure of the vendor to convey, that he would be exposed to a claim for the estimated profits of the land which he had received and held as his own, and, in effect, made chargeable with an estimated value of the personal property, which might be equally at variance with the estimates of both contracting parties. Now, no principle is better settled than that the right to call for specific execution of a contract is reciprocal; when one of the contracting parties may call for specific execution, the other may too. In this case, the vendor’s right to the aid of the court for specific execution, is vindicated by the further consideration that the circumstances of the case made it peculiarly fit for that jurisdiction. It is the case of a contract for land, of which there had been part performance, by surrender of possession, and payment of a portion of the purchase money; and where, in respect to the separate contract of Clarke, the purchaser in possession, there was no note in writing signed by him; and, in respect to the first contract, the obligation of the first three purchasers had been cancelled, and no remedy remained for the vendor against those parties *as obligors. In such a case, the remedy at law was not only inadequate, but at best precarious and doubtful.
The vendor having properly resorted to equity for relief, what is the extent of his claim? The measure of Clarke’s responsibility as to amount, is the purchase money which was to be paid under the first contract; namely, 6581 dollars with interest from the 1st January 1838, and 6500 dollars with interest from the 1st June 1839. That Curtis was to receive from Clarke, under the second contract, as much as he was entitled to claim under the first contract, and that the only variation from the first contract was a change, not in the amount of purchase money but in the time of making the first payment, is satisfactorily established by the parol evidence, by the written engagement which Clarke took from Curtis to convey the property to him when the payments should be made, and the fact distinctly stated in Clarke’s answer, that Curtis was willing to cancel the first contract altogether, and Clarke insisted on it. It is not to be credited, that Curtis would be willing to cancel a contract on which Clarke and two others were bound to him, in order that he might make a sale to Clarke alone for a smaller price, while Clarke was insisting on the contract by which he and two others were bound for a larger price. The decree is clearly right in this particular.
The opinion I have expressed places the right of the vendor to relief in equity on a foundation, of which his retention of a lien on the personal property for the purchase money, forms no part. I am strongly inclined to think, that no such lien remained: that the delivery of the personal property, and the execution of the bonds by the purchasers under the first contract, passed the full property in that part of the subject to them, without any further act, and no lien upon it for the purchase money existed after the title in and possession of it had *passed to the purchasers. The new contract made no change in this respect. It only converted the joint title in and possession of the personalty, before held by Clarke in common with the other original joint purchasers, into the sole title and possession of Clarke, and the joint responsibility of the original joint purchasers into a sole responsibility of him alone. But upon this point, my brethren hold a different opinion, and I readily acquiesce. As to all the other points, I concur with them.
The decree of this court declared, that the appellee Curtis properly sought and was entitled to relief in a court of equity, and that the measure of his claim, under the contract by which the appellant Clarke was substituted as sole purchaser, in place of him and his associates in the original contract, was the amount stipulated to be paid by the original contract, viz: the sum of 6581 dollars, with interest from the 1st January 1838, and 6500 dollars, payable on the 1st June 1839. That the whole subject purchased, real and personal, remained in the hands of the appellant Clarke, chargeable with the purchase money; and though the precise date at which a part of the first mentioned sum of 6581 dollars was payable, is not ascertained, yet that part with interest “thereon from the 1st January 1838, together with the rest of the purchase money, was due and payable at least as early as 1st June 1839. That the court below erred in decreeing the sale of the personal property, on the mere motion of the appellee, before the case was heard and his title to relief adjudicated, and before the amount of the lien thereon had been ascertained by a liquidation of the appellee’s claim ; and if that decree had not been executed, and the propertj’- sold under it, and in all probability dispersed, it would be proper to reverse that order, annul the sale under it, and order *the restitution of the property ; but as such a measure would afford the appellant Clarke, or those entitled to the property, no adequate redress, the appellee should be held accountable for the amount of the sales, he taking the benefit thereof, and his accountability therefor credited, whether the proceeds of the sales be collected or not, against the purchase money due from the appellant Clarke on the contract, unless in the further progress of the case, the title of Colton & Clarke to the propert3T sold under the said order should *723 be asserted and sustained. That before the court should have decreed the payment of the purchase money, the just balance thereof should have been liquidated, by an account in which the appellant Clarke should have credit (on the condition above expressed) for the amount of the sales of the personal property under the said order, and such other discounts, payments or set offs, as he might shew himself entitled to. And that when the balance due of the purchase money should have been so ascertained, the court should have decreed, that the appellee should prepare and tender a conveyance with general warranty from himself and wife to the appellant Clarke; and if he, on such tender, should pay the balance of the purchase money, then the conveyance should be delivered; and if he should not pay it, then the conveyance should be deposited with the clerk of tne court, to be delivered to Clarke, should he pay the said balance of purchase money before the sale ■of the land embraced by the contract, or to be held for the use of the purchaser under the decree of the court; and on such default of payment by the appellant Clarke on the tender of the deed, it should be further decreed, that the said appellant pay to the appellee the balance ascertained as aforesaid, and that the land embraced by the contract should be sold on reasonable notice, on the terms that the purchaser pay one half of the purchase money -in cash, and the other in ^twelve months, the title to be retained as a security therefor, and the land subject to re-sale under the further decree of the court, to raise the amount of the credit instalment in default of the payment thereof. Therefore, the decree, so far as it conflicted with the principles here declared, was reversed, and in all things else affirmed; and the cause was remanded to the circuit superior court to be further proceeded in according to the principles here declared.